# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

|  |  |  |
|---|---|---|
| THE CIT GROUP/EQUIPMENT FINANCING, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 3:06-cv-269 (Phillips) |
| LARRY R. LANDRETH, Individually, and LANDRETH SCHOOL BUS SERVICE, INC., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the court on plaintiff's motion for summary judgment [Doc. 18]. Defendants responded in opposition [Doc. 22], and plaintiff replied [Doc. 25]. Defendant Landreth School Bus Service, Inc. purchased two buses and leased a third from Textron Financial Corporation, all three transactions of which were secured by defendant Landreth. Textron Financial Corporation subsequently assigned all of the agreements to plaintiff. Following default on all three accounts, plaintiff accelerated the remaining balances of the debts owed, repossessed the buses, and sold them privately, applying the proceeds of the sale to reduce the balances owed. Plaintiff argues that these sales were commercially reasonable and it is therefore entitled to any remaining deficiencies, as well as pre- and post-judgment interest. For the reasons that follow, plaintiff's motion will be **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

On March 3, 1998, defendant Larry Landreth entered into an agreement with Textron Financial Corporation ("Textron"), under which he individually and unconditionally guaranteed the payment and/or performances of all obligations of Landreth School Bus Services ("LSBS") at any time owing to Textron. On that same date, LSBS entered into an agreement with Textron in the amount of $304,031.35 to lease a 1998 Prevost 45' Le Mirage XL ("1998 Prevost Bus"). On July 28, 1998, LSBS entered into an installment note for the purchase of a 1996 MCI Bus Model 102DL3 ("1996 MCI Bus"), payment of which was secured by the bus in a separate agreement. On that same date, LSBS also entered into an installment note for the purchase of a 1997 MCI Bus Model 102DL3 ("1997 MCI Bus"). Payment of the 1997 MCI Bus was also secured by the bus in a separate agreement. Under all three of these transactions, LSBS was liable to Textron for any deficiency remaining after the repossession and disposition of the collateral, as well as interest and all reasonable expenses, including attorney's fees, in enforcing Textron's rights and remedies under the Security Agreement.

On March 3, 2000, Textron assigned and set over to the CIT Group/Equipment Financing, Inc. ("CIT") all of Textron's leases, lease schedules, loan agreements, notes, security agreements, and all other documents related thereto, and any and all rights and remedies contained within those contracts and documents. Defendants do not dispute the validity of this assignment.

In or around June 2003, LSBS stopped making payments on the installment notes for the 1996 MCI Bus and the 1997 MCI Bus and the lease for the 1998 Prevost Bus. On or around September 4, 2003, CIT sent to LSBS three separate notices of default. In each of these notices, CIT demanded past due payments and late charges and informed LSBS that failure to pay the amount

due would result in the acceleration of the unpaid balance of the debts owed. The notices further informed LSBS that acceleration could result in the foreclosure of each of the buses and that CIT could proceed to acquire any deficiency judgment. In particular, CIT demanded $18,932.22 for the 1996 MCI Bus, $21,401.48 for the 1997 MCI Bus, and $11,832.78 for the 1998 Prevost Bus in late payments.

When LSBS failed to make the demanded payments, CIT sent three separate acceleration notices, each dated September 30, 2003, informing LSBS that the remaining balance on each of the two installment notes and the lease agreement would be due in full immediately. CIT demanded in full the remaining balance of $256,359.70 for the 1996 MCI Bus, $292,481.28 for the 1997 MCI Bus, and $227,558.03 for the 1989 Prevost Bus.

On or about December 11, 2003, LSBS voluntarily returned the 1996 MCI Bus, the 1997 MCI Bus, and the 1998 Prevost Bus. Defendant Larry Landreth contends that at the time of return, a CIT employee, Jessica Sanford, informed him that the return of the collateral would satisfy his outstanding debt obligations. Plaintiff denies this allegation.

On January 8, 2004, CIT mailed to Landreth and LSBS three notice of disposition of collateral letters, in which CIT informed Landreth and LSBS that the 1996 MCI Bus, the 1997 MCI Bus, and the 1998 Prevost Bus would be sold privately sometime after January 22, 2004. The 1996 MCI Bus was sold privately for $162,000. The date of this sale is in dispute. Plaintiff contends that the sale took place on January 26, 2004, when payment was received. Defendants, however, contend that the sale took place on January 20, 2004, prior to the date which CIT gave in the notification. The 1997 MCI Bus and 1998 Prevost Bus were sold privately in February 2004 for $176,000 and $160,000 respectively. CIT applied all proceeds to reduce the outstanding debt obligations and now

seeks the remaining balance, plus pre- and post-judgment interest, from defendants.

**II.    STANDARD OF REVIEW**

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c). The court must construe the facts and draw all inferences therefrom in the light most favorable to the party opposing the motion—in this case, the defendants. *Matsushita Elec. Indus. Co. v. Zendith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The sufficiency of the evidence at summary judgment is guided by the "substantive evidentiary standard of proof that would apply at the trial on the merits." *Id.* at 252. Because the instant case is governed by the preponderance of the evidence standard, this court must ask itself "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Id.* at 252. This does not mean that the evidence must dictate a verdict for plaintiff; rather, a genuine issue of material fact exists if there is sufficient evidence, beyond a "mere scintilla," that a jury *could* return a verdict for plaintiff. *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Where, as here, the moving party bears the ultimate burden of proof at trial, i.e., where the moving party is the plaintiff, the party "therefore must show that it has produced enough evidence to support the findings of fact necessary to win." *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 237 (3d Cir. 2007). In other words, "it is inappropriate to grant summary judgment in favor of a

moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *Id.* at 238. The non-moving party "can defeat summary judgment if it nonetheless produces or points to evidence in the record that creates a genuine issue of material fact." *Id.* Although the party not bearing the ultimate burden of proof does not have to produce affidavits or other documents that affirmatively negate the opponent's claim, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), the non-moving party cannot "rest on mere pleadings or allegations; rather it must point to actual evidence in the record on which a jury could decide an issue of fact its way." *El*, 479 F.3d at 238.

**III. ANALYSIS**

**A. Governing Law**

Before this court can determine whether and to what extent defendants are liable to plaintiff, it must first establish what law governs. The court is aided in this determination by additional briefs filed by the parties regarding applicable law.

Each of the contracts underlying this dispute contains a choice-of-law clause specifying that Rhode Island law governs. This clause must first be analyzed to determine its validity. Because this court is sitting in diversity, the validity of the choice-of-law clause is governed by Tennessee choice-of-law rules. *Day & Zimmerman, Inc. v. Challoner*, 423 U.S. 3, 4 (1975) (per curiam). If the choice-of-law clause is valid, Rhode Island law will govern this dispute.

In Tennessee, "parties ordinarily are free to contract that the law of some jurisdiction other than that of the place of making will govern their relationship." *Goodwin Bros. Leasing, Inc. v. H&B, Inc.*, 597 S.W.2d 303, 306 (Tenn. 1980). If the parties so contract, "that intent will be

honored provided certain requirements are met." *Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 475 (Tenn. Ct. App. 2003). For the intent to be honored, the choice-of-law provision must be executed in good faith, the chosen jurisdiction must bear a material relationship to the transaction, the basis of the choice must be reasonable, and finally, the parties' choice must not subvert the policy of a state having a materially greater interest and whose law would otherwise govern. *Id.*

The choice-of-law clause at issue meets these requirements. First, there is no indication that the contracts were entered into in bad faith. The provisions are clear and explicit that Rhode Island law would govern, and defendants have pointed to no evidence that they were forced into a contract of adhesion. Second, Rhode Island bears a material relationship to the transaction, as Textron's principal place of business was located in Providence, and therefore the basis of the choice is reasonable. Moreover, the lease agreement in particular states, "The parties acknowledge and agree that the Lease will ultimately be accepted in the State of Rhode Island and that all Lease payments will ultimately be accepted in the State of Rhode Island." Attach. 6 to Doc. 2:1 Exh. Lease, at 9. Finally, the interests of Tennessee or any other state are not materially greater, nor does it appear that any interests would be subverted by the application of Rhode Island law.

In sum, this court finds that the choice-of-law provisions contained in all of the underlying contracts are valid, and Rhode Island law governs this case.

### B. Evidentiary Objections

Defendants raise several evidentiary objections that the court will address briefly before analyzing the substantive issues. First, defendants object to the declaration of Janine Reader submitted by CIT in support of its motion for summary judgment. Defendants contend that because

there is no indication that Janine Reader was duly sworn, the declaration is not an affidavit and is therefore deficient under Federal Rule of Civil Procedure 56. Second, defendants contend that pages from the "Official Bus Blue Book" attached to the motion and referenced within Ms. Reader's declaration are hearsay and should not be addressed by this court. Finally, defendants object to the credibility of Ms. Reader's declaration, contending that certain statements are affirmatively controverted by the affidavit of defendant Larry Landreth. The court will address each in turn.

First, defendants' objection to the validity of the declaration of Ms. Reader is without merit. As plaintiff notes in its reply brief, under 28 U.S.C. § 1746, "[A]ny matter ... required or permitted to be supported, evidenced, established, or proved by ... affidavit ... may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration ... in writing of such person which is subscribed by him, as true under penalty of perjury, and dated ...." 28 U.S.C. § 1746 (2006). The Sixth Circuit therefore permits unsworn declarations to be submitted in lieu of affidavits so long as they meet the strictures of § 1746: they must be "given under the penalty of perjury, certified as true and correct, dated and signed." *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 363 n.3 (6th Cir. 2001); *e.g.*, *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475-76 (6th Cir. 2002) (affirming, *inter alia*, district court's grant of defendant's motion for summary judgment, supported by unsworn declaration substantially conforming to 28 U.S.C. § 1746, even though not dated); *United States v. Davis*, 28 F. App'x 502, 503 (6th Cir. 2002) ("Declarations made under penalty of perjury may be submitted in lieu of affidavits in federal court."). Here, Ms. Reader's unsworn declaration fully complied with the form proposed in 28 U.S.C. § 1746(1). Ms. Reader declared under penalty of perjury that her declaration was true and correct, and she signed and dated the form. [Doc. 21]. Because Ms. Reader's unsworn declaration fully complies with 28 U.S.C. §

1746, defendants' objections to the evidentiary force of her unsworn declaration are overruled.

Defendants further object to plaintiff's use of and reference to the "Official Bus Blue Book," a book published annually listing prevailing market rates for used vehicles. Defendants contend the Official Bus Blue Book constitutes hearsay and therefore the court must not consider it at this stage in the proceedings.

On a motion for summary judgment, "[s]upporting and opposing affidavits ... shall set forth such facts as would be admissible in evidence ...." Fed. R. Civ. Pro. 56(e). Although affidavits themselves are often not admissible at trial, the substance of the affidavits must contain admissible evidence. *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006). Upon a motion for summary judgment, therefore, "courts should disregard inadmissible hearsay statements contained in affidavits, as those statements could not be presented at trial in any form." *Id.* (emphasis removed). Because the information in the Official Bus Blue Book would otherwise constitute hearsay, it must fall within a hearsay exception for this court to consider it. Plaintiff contends that the Official Bus Blue Book falls under the market-reports exception of Federal Rule of Evidence 803.

Federal Rule of Evidence 803(17) provides, "Market quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations" fall outside of the purview of the hearsay rule and therefore are not excluded from evidence. Fed. R. Evid. 803(17). Federal courts have routinely admitted the Blue Book into evidence as falling under the exception provided in Rule 803(17). *E.g., In re Robson*, 369 B.R. 377, 380-81 (Bankr. N.D. Ill. 2007); *Sovereign Bank, F.S.B. v. Finnegan*, 358 B.R. 644, 649 (Bankr. M.D. Pa. 2006). This court agrees, and therefore the attachment of pages from and

references to the Official Bus Blue Book are admissible. Defendants' objections to the contrary are therefore overruled.

Finally, defendants' objections to the substance of Ms. Reader's statements are without merit. A statement by Ms. Reader that she was unaware of a purported agreement between another employee and Mr. Landreth is not inherently inconsistent with defendant Landreth's statement that he was indeed told this, and as such neither should be discredited. The court therefore accepts both the declaration of Ms. Reader and the affidavit of defendant Landreth as true, noting that both so attest under the penalty of perjury. Even accepting as true the assurances of Ms. Sanford that the return of the collateral would constitute a full satisfaction of the remaining debt obligation, as will be discussed in detail below, this is insufficient under Rhode Island statutory law.

### C. Substantive Law of Secured Transactions

This court may only grant summary judgment if it is clear that no genuine issues of material fact exist. As the Supreme Court has held, "the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Here, the governing substantive law is the Rhode Island law of secured transactions. Rhode Island has adopted Article 9 of the Uniform Commercial Code ("U.C.C."). R.I. Gen. Laws §§ 6A-9-101 to -710 (2006). Because the transactions at issue involve security agreements, they are governed by Article 9. *Id.* § 6A-9-109(a)(1) ("[T]his chapter applies to ... a transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract ....").

In order for plaintiff to recover in the instant case, it must demonstrate that it was authorized

under Article 9 to dispose of the collateral to reduce the debt owed by the defendants, that it did so in accordance with Article 9, and that defendants' return of the collateral did not constitute a satisfaction of the debt. The court will address each in turn.

### 1. *Disposition of the Collateral*

Under Article 9, default by a debtor entitles the secured party to "sell, lease, license, or otherwise dispose of any or all of the collateral." R.I. Gen. Laws § 6A-9-610(a) (2006). If a secured party decides to dispose of the collateral, it must first send a "reasonable authenticated notification of disposition." *Id.* § 6A-9-611(b). This notice and "every aspect of [the] disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." *Id.* § 6A-9-610(b). "[W]hether a notification is sent within a reasonable time is a question of fact," *id.* § 6A-9-612(a), but a ten-day advance notice is designated as a de facto reasonable time, *id.* § 6A-9-612(b).

Here, plaintiff has met all of the statutory requirements for disposition of collateral after default with regard to the 1997 MCI Bus and the 1998 Prevost Bus. First, defendants indisputably defaulted on their payments, which entitled plaintiff to sell the collateral under section 6A-9-610(a). Second, plaintiff gave proper notice of disposition of the collateral, describing the debtor and the secured party, the collateral at issue, the method of intended disposition (private sale), the defendants' entitlement to an accounting of the unpaid indebtedness and the fee to be charged therefor, and the time after which the private disposition was to be made. *Id.* § 6A-9-613(1); Attach. 14 to Doc. 21: Ex. Notification of Disposition of Collateral Letters. The notice for the 1997 MCI Bus and the 1998 Prevost Bus was also well within the ten-day safe harbor provided in § 6A-9-612(b), as notice was issued on January 8, 2004, and the sales took place on February 20, 2004 and

February 24, 2004, respectively. Finally, every aspect of the actual disposition of the collateral was commercially reasonable in accordance with section 6A-9-610(b). Article 9 provides that "[a] disposition of collateral is made in a commercially reasonable manner if the disposition is made ... in the usual manner on any recognized market ... or [o]therwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition." *Id.* § 6A-9-627(b)(1), -(3). Here, plaintiff disposed of the collateral by posting notice of the sale on its website, by listing the buses in a weekly email sent to all previous clients, and by listing the buses in trade magazines. Defendant Landreth attempts to cast doubt on the commercial reasonableness of this practice by stating that the buses were not listed in the trade magazines he receives. Although plaintiff did not list the buses in every trade magazine, this does not serve to negate the fact that plaintiff sold the buses in the usual manner on recognized markets and in conformity with reasonable commercial practices.

Defendants further dispute in particular the reasonableness of the disposition of the 1996 MCI Bus because plaintiff sold the bus before the date listed in the notification. Plaintiff, on the other hand, argues that the actual sale did not occur until after the date listed in the notification; therefore the notice was timely and reasonable.

Article 9 of the U.C.C. adopts the definition of "sale" in Article 2 thereof. R.I. Gen. Laws. § 6A-9-102(b) (2007) ("[T]he following definitions in other chapters apply to this chapter: ... "Sale" § 6A-2-106 ...."). Under Article 2, "[a] 'sale' consists in the passing of title from the seller to the buyer for a price." *Id.* § 6A-2-106(1). The date on which title transferred is therefore the date of sale for purposes of determining whether the notification was given in reasonable advance of disposition.

Here, the date as to which title to the 1996 MCI Bus passed is unclear. Defendants contend the sale occurred on January 20, 2004, prior to the January 22, 2004 date given in the notification after which sale would occur. Plaintiffs, however, contend that the sale was not completed until January 26, 2004. Yet the exhibits presented by plaintiff demonstrating the sale of the 1996 MCI Bus list at least three different dates. First, the Bill of Sale is dated January 20, 2004. A subsequent Statement of Sale is dated January 20, 2004, but above this date is listed "1/26/04" in handwriting. The Statement of Sale itself, however, is a fax dated January 22, 2004. The court cannot ascertain the date at which title transferred, and therefore a question of fact remains as to when the title transferred hands. If the title transferred at any time before January 23, 2004, this would be prior to the date of disposition listed in the notification, which stated that the buses would be sold "sometime after Thursday, January 22, 2004." Because "[e]very aspect of a disposition of collateral ... must be commercially reasonable," R.I. Gen. Laws § 6A-9-610(b) (2006), there remain genuine issues of material fact with regard to the disposition of the 1996 MCI Bus.

Plaintiff attempts to overcome this by citing a 1979 opinion by the Rhode Island Supreme Court, in which that court held that the notification and whether it was sufficient would not affect the commercial reasonableness of the disposition. *Assocs. Capital Servs. Corp. v. Riccardi*, 408 A.2d 930, 932-33 (R.I. 1979). Yet the U.C.C. has been significantly amended since 1979, and at that time the notification requirement was merely part of the provision regarding disposition of collateral after default. Under the current U.C.C., notification is a separate requirement, and therefore it is unclear whether the holding of *Riccardi* still stands. In any event, the current U.C.C. explicitly provides that "whether a notification is sent within a reasonable time is a question of fact."

The issue of whether the disposition of the 1996 MCI Bus was reasonable must therefore be resolved during a trial on the merits.

        2.     *Return of the Collateral in Full Satisfaction of the Remaining Debt Owed*

Defendants further argue that plaintiff agreed to accept the return of the collateral in full satisfaction of the debt. In support, defendants contend that plaintiff's employee assured defendants that return of the collateral would constitute a satisfaction of the debt.

However, the acceptance of collateral in full or partial satisfaction of the debt is governed by Article 9. Section 6A-9-620(b) provides, "A purported or apparent acceptance of collateral under this section is ineffective unless: (1) The secured party consents to the acceptance in an authenticated record or sends a proposal to the debtor; and (2) The conditions of subsection (a) are met." *Id.* § 6A-9-620(b). Subsection (a) sets forth four rigorous requirements, all of which must be met before a secured party may accept collateral in full or partial satisfaction of the debt: the debtor consents to the acceptance; the secured party does not receive a notification of objection to the proposal by persons with interests in the collateral; the collateral is not consumer goods in possession of the debtor; and the secured party is not required to dispose of the collateral pursuant to subsection (e),[1] or the debtor waives the requirement. *Id.* § 6A-9-620(a).

In the instant case, the secured party did not consent to the acceptance in an authenticated record or send a proposal to the debtor. Rather, an employee purportedly told the defendants over the telephone that a return of the collateral would constitute a satisfaction of the debt. Furthermore, none of the rigorous requirements set forth in subsection (a) has been met. In particular, debtor did

---

[1] Subsection (e) requires disposition if sixty percent of the price has been paid in the case of consumer goods, either through a purchase-money security interest or through a non-purchase-money security interest. R.I. Gen. Laws § 6A-9-620(e) (2006).

not consent, as required by subsection (c), to the full satisfaction of the debt.[2]  Defendants have therefore not met the requirements of § 6A-9-620(a) and (b).

In sum, although the parties dispute whether the CIT employee assured Landreth that the return would be in satisfaction of the debt, even assuming its truth, plaintiff is entitled to recovery. The statutory requirements for a return of collateral to constitute a full satisfaction of the outstanding debt obligation under § 6A-9-620 simply have not been met, and therefore the employee's purported assurance carries no legal force.  There is therefore no genuine issue of material fact, and plaintiff is entitled to recovery as a matter of law, as discussed above, with regard to the 1997 MCI Bus and the 1998 Prevost Bus.

### 3. *Plaintiff's Delay in Filing This Action*

Defendants assert that plaintiffs have prejudiced defendants by delaying in filing this action, and therefore plaintiff's claims are barred.  Resp. of Larry R. Landreth, Individually and Landreth School Bus Service, Inc. in Opp. to Pl.'s Mot. for Summ. J.at 1.  Defendants did not, however, substantiate these arguments in the brief filed contemporaneously with the response.  Regardless, these claims are without merit.

---

[2] Section 6A-9-620(c)(2) states,

> A debtor consents to an acceptance of collateral in full satisfaction of the obligation it secures only if the debtor agrees to the terms of the acceptance in a record authenticated after default or the secured party:
> (i) Sends to the debtor after default a proposal that is unconditional or subject only to a condition that collateral not in the possession of the secured party be preserved or maintained;
> (ii) In the proposal, proposes to accept collateral in full satisfaction of the debt it secures; and
> (iii) Does not receive a notification of objection authenticated by the debtor within 20 days after the proposal is sent.

R.I. Gen. Laws § 6A-9-620(c)(2) (2007).  None of these requirements has been met.

While the Rhode Island Supreme Court does not appear to have addressed the applicable statute of limitations to an enforcement claim under Article 9, plaintiff filed well within any of the possibly applicable statutes. As one court has noted, "The majority of courts ... have applied the four-year statute of limitations for breach of a sales contract, as provided in UCC § 2-725." *Cabrera v. Courtesy Auto, Inc.*, 192 F. Supp. 2d 1012, 1016 n.6 (D. Neb. 2002). The only other potentially applicable statute appears to be that for general "civil actions not otherwise limited," which provides a period of ten years. R.I. Gen. Laws § 9-1-36 (2007) (citing R.I. Gen. Laws § 9-1-13 (2007) ("Except as otherwise specially provided, all civil actions shall be commenced within ten (10) years next after the cause of action shall accrue, and not after.")). The Rhode Island Supreme Court has not apparently addressed when this time period begins to run, but as the court noted in *Cabrera*, "[T]he majority rule ... where a retail installment contract is involved, is that the statute of limitations begins to run on deficiency liability from the date when the debt of the buyer became due and not from the date of the sale of the collateral ...." *Cabrera*, 192 F. Supp. 2d at 1016 (quotations omitted).

Applying these general principles, the statute of limitations would begin to run from the date plaintiff accelerated the debt owed and held it immediately due, on September 30, 2003. Plaintiff filed this suit on July 11, 2006. Even were the shorter four-year period under Article 2 of the U.C.C. to apply, plaintiff filed within the prescribed period and was under no obligation to file earlier. Accordingly, defendants' arguments to the contrary (which were unsupported in the brief filed contemporaneously with the response) are overruled.

## IV. CONCLUSION

Because plaintiff followed the requirements of Article 9 regarding the disposition of collateral after default with regard to the 1997 MCI Bus and the 1998 Prevost Bus, plaintiff's motion for summary judgment is **GRANTED IN PART** with regard to the 1997 MCI Bus and the 1998 Prevost Bus. There remain, however, genuine issues of material fact regarding the disposition of the 1996 MCI Bus, and plaintiff's motion is **DENIED IN PART** with regard thereto. The parties shall prepare the remaining count of the 1996 MCI Bus for trial.

**IT IS SO ORDERED**.

**ENTER:**

s/ Thomas W. Phillips
United States District Judge